UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHARON KILLIAN )<br>)<br>    Plaintiff )<br>)<br>v. )<br>)<br>GEORGETOWN DAY SCHOOL )<br>)<br>    Defendant. )<br>_____ ) | Civil Action No. 05-1925 (EGS) |

STATEMENT OF MATERIAL FACTS AS TO
WHICH THERE EXISTS A GENUINE ISSUE

Plaintiff Sharon Killian respectfully submits a Statement of Material Facts as to Which There Exists a Genuine Issue ("Statement of Genuine Issues") pursuant to Local Rule 7.

Plaintiff's Statement of Genuine Issues:

1. Whether, after Debbie Haynes' departure from the School, Nick Ryan chose on a unilateral basis to honor Ms. Haynes with a prestigious student award ("The Debbie Haynes Excellence and Achievement in the Studio Arts Award"), despite knowing Ms. Haynes had done "terrible things" while in the Department. Ex. 5 (Denevi Mediation Notes, Bates 2788).

2. Whether Mr. Ryan so honored Ms. Haynes despite the clear risk of continuing discomfiture to the lone African American in the Department Sharon Killian, who would be compelled to nominate students for the Haynes Award annually for the duration of her career at GDS. Ex. 11 (Nick Ryan to Sharon Killian & Laura Tolliver Re "Art Awards 2002").

3. Whether Mr. Ryan "[d]idn't think [the Haynes Award] was any of Sharon's business," Ex. 5 (Denevi Mediation Notes, Bates 2790), even though it is undisputed Mr. Ryan was new to the Department, while Mrs. Killian had a long history in the Department and with Ms. Haynes.

4. Whether the attitude on Mr. Ryan's part reflected in Plaintiff's Statement 1 is an example of a sense of "white superiority and privilege" on his part which the School's Co-Director of Diversity Elizabeth Denevi has reported to Mrs. Killian.  Ex. 3, Killian Deposition at 164.

5. Whether some time in November 2003 Mr. Ryan screamed at an Afro-Hispanic parent named Rosa Grillo, who "could not imagine Mr. Ryan screaming at a white parent." Ex. 13, Grillo Affidavit,¶ 3.  She reported the episode to the Principal Paul Levy and Vice Principal Tom Yoder and "told both of them I did not believe Mr. Ryan would have behaved in the same manner with a white parent. " Id., ¶ 4.  She also told one of the School's diversity coordinators Elizabeth Denevi "that he would not have screamed at a white parent, [and] Ms. Denevi's response left no doubt she agreed."  ¶ 3.

6. Whether the School's Co-Director of Diversity Ms. Denevi agreed with Ms. Grillo that Mr. Ryan would not have screamed at a white parent.  Id., ¶ 3.

7. Whether Ms. Denevi was truthful when she testified she did not remember having a conversation with Rosa Grillo.  Ex. 1, Denevi Deposition at 29-31.

8. Whether Principal Paul Levy and other School officials had reason to know Mrs. Killian was being subjected to regular and pervasive abusive treatment based on race in the Art Department, when the Diversity Director at the School from 2000-03 attests that she "spoke with Mr. Levy myself on several occasions to let him know I also thought that the problems in the Art Department were attributable to racist attitudes and conduct on the part of Mr. Ryan." Ex. 24, Affidavit of Vernese Edghill, ¶ 4.

9. Whether during Black History Month 2002 Nick Ryan ripped down banners created by members of the School's Black Culture Club announcing an event at the School, and screamed at

Mrs. Killian when she questioned his conduct. Ex. 3, Killian Deposition at 183-84, 186.

10. Whether Mr. Ryan acted in the manner described in Plaintiff's Statement 9 in order to punish Mrs. Killian for taking down student artwork in the School's entranceway without permission, despite extenuating circumstances including a death in the family and the context of Black History Month, Ex. 16 (Sharon Killian to Nick Ryan, March 5, 2002), and despite the fact Mr. Ryan too has taken down artwork without Laura Tolliver's permission. Ex. 3, Killian Deposition at 197.

11. Whether Mr. Ryan's conduct as described in Plaintiff's Statement 10 was motivated by Mrs. Killian's race, when he has never yelled at Laura Tolliver, Mrs. Killian's white counterpart in the Art Department, Ex. 9, Tolliver Deposition at 30, and there is no evidence Mr. Ryan has yelled at anyone associated with the School other than Mrs. Killian and GDS parent Rosa Grillo.

12. Whether the School's Co-Directors of Diversity Elizabeth Denevi and Mariama Richards agreed with Anike Oliver's assessment that the African American student would not have been expelled if he were white, and therefore had reason to know the School was at risk of potential liability in any lawsuit. Ex. 2, Oliver Affidavit, ¶ 9.

13. Whether the School's Co-Director of Diversity Ms. Denevi was untruthful in deposition when she testified she agreed with the decision to expel the African American student. Ex. 1, Denevi Deposition at 76.

14. Whether the School's Co-Director of Diversity Ms. Denevi was untruthful in deposition when she denied hearing reports of other racist conduct. Ex. 1, Denevi Deposition at 26 ("No, not me personally"). Ex. 2, Oliver Affidavit, ¶ 7 ("Yes, I know [it's racist]. My people *are* racist." (emphasis in original).

15. Whether during February 2004 the School engaged in coercion to discourage faculty and staff from having any contact with the African American student, his family, or his lawyers, and did so in order to protect against liability by denying the student and his family access to potential witnesses and relevant information. Ex. 8. (Email Re "Dept. Heads Mtg Update", February 26, 2004).

15. Whether Mr. Ryan said "I can't bend down low enough to the ground to understand you", while gesturing in an ape-like manner, and did so to suggest Mrs. Killian herself was ape-like. Ex. 3, Killian Deposition at 302, 359-61.

16. Whether the conduct described in Plaintiff's Statement 15 was fundamentally racist on Mr. Ryan's part. Ibid.

17. Whether Mrs. Killian complained to Elizabeth Denevi and Mariama Richards about conduct on February 20, 2004 she believed to be fundamentally racist on Mr. Ryan's part. Ex. 4, Killian Affidavit, ¶ 8.

18. Whether the School's Co-Directors of Diversity Elizabeth Denevi and Mariama Richards were less than truthful when they testified Mrs. Killian told them she did not believe Mr. Ryan's conduct to be racist. Ex. 1, Denevi Deposition at 85; Ex. 7, Richards Deposition at 43.

19. The record shows Elizabeth Denevi knew Mr. Ryan had subjected Rosa Grillo to verbal abuse in November 2003, which she also agreed was attributable to Ms. Grillo's race. Ex. 13, Grillo Affidavit, ¶ 3. It also shows she has told Mrs. Killian that Mr. Ryan has a sense of "white superiority and privilege". Ex. 3, Killian Deposition at 164. This gives rise to a genuine issue whether, in order to protect the School against yet another claim of discrimination at a time when a lawsuit was pending, Ex. 2, Oliver Affidavit, ¶ 10, the Co-Directors of Diversity

Elizabeth Denevi and Mariama Richards conducted a sham "mediation", which, like their less than truthful deposition testimony, was intended to protect the School against potential liability deriving from Mr. Ryan's conduct.

20. Whether the failure to document Mrs. Killian's description of Mr. Ryan's conduct, while noting down Mr. Ryan's competing version; the failure to inform Mrs. Killian what Mr. Ryan's competing version was, while letting Mr. Ryan know Mrs. Killian's account, is evidence of a process indeed designed to protect the School against liability rather than determine whether Mr. Ryan had engaged in outrageous and racially abusive conduct against Mrs. Killian. Ex. 5 (Denevi "Mediation" Notes); Ex. 6 (Richards "Mediation" Notes); Ex. 4, Killian Affidavit, ¶ 2.

21. Whether the Co-Directors of Diversity at the School withheld Mr. Ryan's competing version of events because they knew it was not a plausible account of his statement. Ex. 4, Killian Affidavit, ¶ 7.

22. Whether Nick Ryan intended to deceive Ms. Denevi and Ms. Richards when he gave them a memorandum he had furnished in an email of March 6, 2002 to Paul Levy re "Personnel Issues", and said that he had "never shared this with anyone ... and I am hesitant to do so now." Ex. 18 (Nick Ryan to Mariama Richard & Elizabeth Denevi, March 2, 2004).

21. Whether, after Mrs. Killian gave notice of her claims, the "investigation" conducted on behalf of the School could have been meaningful when the report shows the Co-Directors of Diversity Ms. Denevi and Ms. Richards withheld knowledge of racist attitudes and conduct in the Art Department and elsewhere in the School, and shows that former Principal Paul Levy provided inaccurate information to the effect he never became aware Mrs. Killian believed Mr. Ryan's conduct was attributable to race. Defendant's Exhibit 26. Ex. 24, Edghill Affidavit ¶¶ 3 and 4.

22. Whether, despite the pendency of an investigation into claims of racist attitudes and conduct on his part, Mr. Ryan nonetheless attempted during February 2005 to prevent Mrs. Killian from acquiring a key to a storage cabinet containing departmental cameras, proposing that keys be limited to him and Laura Tolliver.  Ex. 21 (Memoranda Re Keys in Art Department).

23. Whether in light of the other evidence of racist attitudes and conduct on Mr. Ryan's part shown in the foregoing Statements, Mr. Ryan's effort during February 2005 to deny Mrs. Killian equal access to photographic equipment in the Department was attributable to race.

24. Whether Mrs. Killian has been subjected to regular and pervasive abusive conduct on the basis of race in the High School Art Department of the Georgetown Day School.  Ex. 4, Killian Affidavit, ¶ 14.

25. Whether, despite knowing a settlement of the controversy was possible that would not require return for the 2005-06 academic year, Mrs. Killian was nonetheless preparing in the normal course to go back to School if the matter did not settle.  Id., ¶¶ 16, 17 and 18.

26. Whether Mrs. Killian abandoned her position, or whether a medical condition prevented her return for the 2005-06 academic year.  Ex. 22, Affidavit of Fran Pearson, M.D.

27. Whether the School has fostered an atmosphere of intimidation that has the effect of discouraging faculty and staff from discussing issues pertaining to possible instances of discriminatory conduct in the School.  Ex. 2, Oliver Affidavit, ¶¶ 12, 13.

Respectfully submitted,

/s/
John P. Racin  Bar No. 942003

1721 Lamont Street, N.W.
Washington, D.C.  20010
202.265.2516

Attorney for Plaintiff
Sharon Killian